## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| F.B., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. 3:26-cv-717 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| LEONARD ODDO, *et al.* | ) | |
| | ) | Docket No. 1 |
| Respondents. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### 1. Factual Background

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1). Petitioner, F.B., 45 years old and a Haitian national, is currently detained at Moshannon Valley Processing Center.[1]  As set forth in her Preliminary Statement:

> Petitioner has lived in the United States . . . since she was 12 years old and is a survivor of domestic violence. The Department of Homeland Security ("DHS") granted her Temporary Protected Status ("TPS") for Haiti in 2010 and repeatedly re-approved her over the following decade. In April 2025, F.B. was arrested and detained by DHS and put into removal proceedings. In December 2025, an immigration judge granted F.B. cancellation of removal under the Violence Against Women Act—making F.B. immediately eligible for lawful permanent resident status . . . .

(Docket No. 1 at 1).[2]  The immigration judge ("IJ) also granted Petitioner TPS.  DHS then appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which appeal remains

---

[1] On April 28, 2026, this Court granted Petitioner leave to proceed under the pseudonym "F.B." and to redact certain personally identifying information, as set forth in its Order.  (Docket No. 10).

[2] As more fully set forth in the Petition, Plaintiff and her sister were the survivors of gang violence in Haiti and in 1992 were sent by their family – first to their grandparents in Miami, Florida and thence to join their parents and U.S. born siblings in New York.  Plaintiff married in 2001 (at age 21) and had her first child in 2003, but became a victim of increasing domestic abuse.  Between 2003 and 2017, she had two more children, was intermittently separated

pending approximately five months later.   As DHS arrested F.B. at her home on April 7, 2025, she has now been held in detention by Respondents, in custody at Moshannon without a bond hearing, for over a year.[3]

The Court finds that whether or not Petitioner has fully exhausted all administrative remedies prior to filing this habeas petition is of no moment as it is an exercise in futility given the recent decisions of the Board of Immigration Appeals (*i.e., Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)).

## 2.  The Parties' Positions

Petitioner contends that her detention without an individualized determination of dangerousness or flight risk has been unreasonably prolonged, in violation of the Due Process Clause; in support whereof she proffers an analysis of the controlling factors articulated in *German Santos v. Warden, Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020).[4]

---

from her physically violent husband (who returned to his Florida-based family, sometimes forcibly separating her from her children), worked as a licensed home health care provider, and received treatment for a stage 3 leukemia diagnosis.  In 2017, after a particularly violent attack (including strangulation and beating), Plaintiff reported her husband to the police, and thereafter remained in New York with her three children, continuing to work as a home health aide.  As discussed *infra*, in early February 2025, she was arrested and released on charges dismissed that October.  (Docket No. 1 at 5-8).  Petitioner's immigration status, including her 2010 TPS application approval, renewals and employment authorization(s), are also detailed in her Petition.  (*Id.* at 8-9).

[3]  Petitioner was charged with being inadmissible due to being "present in the United States without being admitted or paroled" under 8 U.S.C. § 1182(a)(6)(A)(i)).  Her current counsel began *pro bono* representation in her removal proceedings on April 21st.  (*Id.* at 9).

[4] In addition to claiming (in Count I) that her detention has been unreasonably prolonged, Petitioner also asserts (in Count II) that her detention is "arbitrary and punitive" because, since she is "neither a danger nor a flight risk", her detention does not serve any legitimate governmental purpose.  (Docket No. 1 at 31).  The Court finds that Count II is substantially duplicative of Count I, and does not state a viable claim when shorn of the Count I predicate of unreasonable prolongation.  That is, the Court believes that detaining non-citizens *for a reasonable time* pending removal proceedings clearly serves the legitimate governmental interests of preventing flight or danger to the community.  *See German Santos*, 965 F.3d at 209 ("When an alien is first detained, we can presume that detention is needed to prevent flight or danger to the community. The benefit of detaining these aliens as a class outweighs their 'short-term deprivation of liberty.'") (citations omitted).  *Cf. Demore v. Kim*, 538 U.S. 510, 528 (2003) (Mandatory detention under 8 U.S.C. § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.").

For their part, Respondents contend that Petitioner is subject to mandatory detention, either under 8 U.S.C. § 1225(b) (as interpreted in *Matter of Yajure-Hurtado*, 29 I&N Dec. 216, 220 (B.I.A. 2025), or as a "criminal alien" under 8 U.S.C. § 1226(c). With respect to Petitioner's due process claim, Respondents appear to argue, based on their reading of *Demore*, that unless removal proceedings are a "ruse" or a "sham", a non-citizen subjected by statute to mandatory detention during such proceedings has no substantive right to bond and hence no procedural right to a bond hearing, regardless of the duration (or conditions) of her detention and of whether she actually poses a danger to the community or a risk of flight. (Docket No. 7 at 20-22). Without identifying any material change in the legal landscape since *German Santos* was decided in 2020, Respondents appear to conclude that the decision's due process analysis cannot be applied even to the very circumstances to which it was addressed, and that hence "the *German Santos* framework is now redundant." (*Id.* at 22). Nevertheless, Respondents proffer in the alternative their contrary analysis of the *German Santos* factors to support their view that a bond hearing is not required. (*Id.* at 23-25).

### 3. Analysis

#### (a) Respondents' Objections

The Court will begin by considering Respondents' objections to Petitioner's claims. First, the Court rejects Respondents' contention that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), merely because she is a non-citizen who is present in the United States and has not been admitted. Observing that the United States Courts of Appeals for the Third Circuit has not yet addressed this issue, this Court joins with the Courts of Appeals for the Second,

Seventh, and Eleventh Circuits,[5] and the vast majority of district courts[6] (including, so far as the Court is aware, all district court decisions within the Third Circuit),[7] and disagrees with the Courts of Appeals for the Fifth and Eighth Circuits[8] and a small minority of district courts.

Second, the Court also rejects Respondents' argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). Respondents contend that when Petitioner was arrested in New York in February 2025, she was charged with a "crime that results in . . . serious bodily injury to another person", which would be a predicate offense subjecting her to mandatory detention without bond pursuant to § 1226(c). (Docket No. 7 at 11). Respondents do not assert that the crime with which Petitioner was charged actually resulted in "serious bodily injury". Rather, they rely on the statutory definition of the charged crime, "assault in the third degree" (a Class A misdemeanor under N.Y. Penal Law § 120.00), which applies to an actor who intentionally causes "physical injury to another person". (*Id.*). Respondents provide no reason

---

[5] *See Hernandez Alvarez v. Warden, Fed. Detention Center, Miami*, 2026 WL 1243395 (11th Cir. May 6, 2026); *Cunha v. Freden*, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.* ("*Castañon-Nava I*"), 161 F.4th 1048 (7th Cir. 2025). *See also Castañon-Nava v. U.S. Dep't of Homeland Sec.* ("*Castañon-Nava II*"), 2026 WL 1223250 (7th Cir. May 5, 2026). *Castañon-Nava I* involved the Government's request for stay pending appeal of, *inter alia*, an order for release of non-citizens arrested without warrants, entered in connection with a class action consent decree. The Government contended that detention of those non-citizens was mandated by 8 U.S.C. § 1225(b), and that the release order violated 8 U.S.C. § 1252(f)(1) by enjoining operation of § 1225(b) on a class-wide basis. Two members of a divided panel, Judges Lee and Pryor, held that "Defendants are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castañon-Nava I*, 161 F.4th at 1061. The third panel member, Judge Kirsch, dissented but did not reach the applicability of § 1225(b).

In *Castañon-Nava II*, the same panel ruled on the merits of the Government's appeal with respect to the same orders. This time, Judge Lee argued at length that non-citizens present in the United States are not subject to mandatory detention under § 1225(b); Judge Pryor concurred in the result but declined to reach the applicability of § 1225(b), deeming the issue waived by the Government; and Judge Kirsch argued at length in dissent that non-citizens present in the United States are subject to mandatory detention under § 1225(b). This Court agrees with Judge Lee's opinion, and disagrees with the dissent.

[6] *See, e.g.*, *Cifuentes Alvarez v. Noem*, 2026 WL 545382 (W.D. Pa. Feb. 26, 2026) (Ranjan, J.); *Calzado Diaz v. Noem*, 2025 WL 3628480 (W.D. Pa. Dec. 15, 2025) (Haines, J.).

[7] *Cf.* Docket No. 7 at 7 ("The government acknowledges that all courts in this district (and many more elsewhere) have reasoned that § 1225(b)(2)(A) requires that an 'applicant for admission' be actively 'seeking admission' at or near the border to fall within its scope.").

[8] *See Avila v. Bondi*, 2026 WL 819258 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

4

or authority for their implicit claim that "physical injury" necessarily entails "serious bodily injury". In any event, such a claim is untenable in view of N.Y. Penal Law § 120.05(1), which provides that an actor who intentionally causes "serious physical injury to another person" is guilty of "assault in the second degree", a Class D felony. If every physical injury were serious, there would be no basis for the Penal Law's harsher treatment of actors who cause "serious" physical injury.

In addition to arguing that her third degree assault charge does not constitute a predicate offense under § 1226(c), Petitioner presents evidence that all charges from her February 2025 arrest have been dismissed (Docket No. 12-1), and she argues that § 1226(c) does not apply to charges that have been dismissed, because the element of being "charged" is stated in the present tense. (Docket No. 12 at 13-14). The Court agrees. "Under common usage of the English language, if criminal charges against someone have been dropped, we would not continue to say the person is 'charged with' that crime, present tense." *Guzman v. Arteta*, 2026 WL 1045920, at *3 (S.D.N.Y. Apr. 16, 2026).

Finally, Petitioner argues that predicating mandatory detention on anything short of a conviction would violate due process. (Docket No. 12 at 14-15). Although this alternative argument is also well-supported and plausible, since Petitioner is not subject to any pending charge of a predicate offense, it is unnecessary for the Court to reach Petitioner's constitutional due process argument in order to conclude that § 1226(c) does not apply. *Cf., e.g., Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 222 n.11 (3d Cir. 2018) ("[I]t is well established that courts have duty to avoid passing upon a constitutional question if the case may be disposed of on some other ground.").

Third, the Court rejects Respondents' apparent reading of *Demore* and *German Santos* as permitting detention of removable aliens without a bond hearing for an unlimited duration so long as their removal proceedings are not a "sham". In *Demore*, the Court held that Congress may require detention "for the *brief period* necessary for . . . removal proceedings." *Demore*, 538 U.S. at 513 (emphasis added). *See also German Santos*, 965 F.3d at 208 (opining that the *Demore* Court upheld the requirement of detention without a bond hearing "because it understood that the detention would last only for a 'very limited time.'") *Cf. Demore*, 838 U.S. at 532-33 (Kennedy, J., concurring) (stating that the Court's opinion was consistent with the premise that the detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified").

In *German Santos* the Third Circuit crystallized its interpretation of *Demore* as follows:

> [In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011)], we distilled the following rule from *Demore*: Though the Government must detain aliens convicted of certain crimes at the start of their removal proceedings, "the constitutionality of this practice is a function of the length of the detention." "At a certain point," we explained, "continued detention becomes unreasonable and ... unconstitutional unless the Government has justified its actions at a hearing."

*German Santos*, 965 F.3d at 209, quoting *Diop*, 656 F.3d at 232 (citations omitted). It is therefore abundantly clear that, at least within this Circuit, a statutory mandate of detention pending removal proceedings is subject to an as-applied due process challenge when it becomes unreasonably prolonged. Although Respondents may disagree with *German Santos*, or label it inapplicable and redundant, this Court is not free to do likewise.

Nevertheless, even though the Court recognizes the viability of Petitioner's due process challenge to her prolonged detention without bond, it is not prepared to address the parties' competing analyses of the *German Santos* factors, or otherwise to determine the merit of her due

6

process claim, until it first considers the statutory and regulatory implications of its rejection of Respondents' contentions that Petitioner's detention is governed by 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(c). Because those provisions do not apply, the Court concludes that Petitioner's detention is governed by 8 U.S.C. § 1226(a). *See Jennings v. Rodriguez*, 538 U.S. 281 (2018) ("Section 1226(a) creates a default rule" for "aliens already present in the United States"). Section 1226(a) authorizes the Government to "continue to detain [an] arrested alien", or to "release the alien on . . . bond . . . or . . . conditional parole". 8 U.S.C. § 1226(a)(1), (2). Under implementing regulations, an alien detained under § 1226(a) has a right, upon application, to a bond hearing before an Immigration Judge ("IJ"). *See* 8 C.F.R. §§ 236.1(d), 1003.19.

### (b) Petitioner's Requested Relief

Petitioner requests that this Court (1) enjoin Respondents from transferring her out of the district; (2) order Petitioner's immediate release; (3) conduct its own bond hearing; (4) order a prompt bond hearing before an impartial adjudicator, in which (a) Respondents will bear the burden of proving that Petitioner is a danger to the community or a flight risk, (b) by clear and convincing evidence, and (c) the adjudicator will consider alternatives to detention and Petitioner's ability to pay a bond; (5) enjoin Respondents from re-detaining Petitioner without another such hearing; (6) enjoin Respondents from invoking the automatic stay provision of 8 C.F.R. § 1003.19(i)(2); and/or (7) award Petitioner attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The Court will address these requests briefly, in turn.

First, the Court will not enjoin transfer of Petitioner. 8 U.S.C. § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review any decision or action of the Attorney General . . . specified under this subchapter to be in the discretion of the Attorney General . . . ."; and the Third Circuit has held that "the place of detention is left to the discretion of the Attorney

7

General." *Sinclair v. Attorney General of U.S.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006), citing, *inter alia*, 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."). Consequently, the Court lacks jurisdiction to entertain Petitioner's request to enjoin her transfer.

Second, the Court will not order Petitioner's immediate release. The Court notes that in her Petition, Petitioner conceded that "[t]he proper remedy for [Petitioner's] unreasonably prolonged detention is a bond hearing . . . ." (Docket No. 1 at 25). *See Avelar Ramos v. Bondi*, 2026 WL 614875, *5 (E.D. Va. 2026) (granting bond hearing in lieu of immediate release because federal habeas statute, 28 U.S.C. § 2243, directs court to "dispose of the matter as law and justice require"; and "'law and justice require'" redressing [the detainee's] specific injury, namely the deprivation of his access to a bond hearing").[9]

Third, the Court will not, at present, conduct its own bond hearing. *See Leslie v. Holder*, 865 F. Supp. 2d 627, 631 (M.D. 2012) (court permitted bond hearing "initially conducted by an Immigration Judge", being "mindful of the deference which should be accorded in the first instance to agency decision-making processes").[10] Petitioner asserts that "this Court should conduct the bond hearing" due to "the high risk that [Petitioner] would be deprived of a constitutionally adequate bond hearing before an immigration judge." However, the Court "cannot speculate as to whether, if the Court were to order a bond hearing for Petitioner, the IJ

---

[9] The Court further notes that just as detention without a bond hearing may create a risk of erroneous deprivation of the detainee's liberty interest, immediate release without a bond hearing may create a risk of erroneous deprivation of the Government's security interests. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 355 (1976), *quoted in Guerrero-Sanchez*, 905 F.3d at 225 (listing "the risk of an erroneous deprivation of such interest through the procedures used" as a factor in assessing what process is constitutionally required).

[10] The Court notes that the *Leslie* court was ultimately required to conduct its own bond hearing due to the IJ "hav[ing] neglected to fully address crucial procedural safeguards that are implicit in *Diop*". *Leslie*, 865 F. Supp. 2d at 632.

would violate Petitioner's procedural due process rights." *Cahuec v. Soto*, 2025 WL 3524463, *2 (D. N.J. 2025).

Fourth, the Court will order a prompt bond hearing. The Court concludes that Petitioner has a clear right to a bond hearing under § 1226(a) and its implementing regulations. Accordingly, the Court will order a hearing on this statutory/regulatory ground and will decline to reach Petitioner's due process ground, in keeping with its "duty to avoid passing upon a constitutional question if the case may be disposed of on some other ground." *Guerrero-Sanchez*, 905 F.3d at 222 n.11.

The Court is mindful of Petitioner's contention that "a regular bond hearing under § 1226(a) cannot cure the due process violation arising from [Petitioner's] detention without an individualized determination", and that "[a] bond hearing under § 1226(a) would also not remedy [Petitioner's] unreasonably prolonged detention." However, Petitioner fails to explain why this is so. A § 1226(a) bond hearing has at least the potential to provide substantially the same relief as an order for immediate release.

The Court will not, at present, order application of the procedural safeguards requested by Petitioner (regarding burden and standard of proof, and consideration of detention alternatives and ability to pay). Instead, the Court will direct Respondents to apply procedures that comport with due process, and allow the IJ to determine in the first instance[11] whether the additional procedural safeguards requested by Petitioner are necessary or appropriate in view of her prolonged erroneous deprivation of an initial bond hearing.[12] In the event that Petitioner believes

---

[11] The Court notes that § 1226 and the applicable regulations do not specify burden or standard of proof, or required considerations; and so far as the Court is aware, the Immigration Court does not have any established practice in cases involving prolonged erroneous deprivation of an initial bond hearing.

[12] *See Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("In a fundamentally fair bond hearing, due process has three essential elements. An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make

the IJ has not afforded her constitutionally adequate procedures, she may apply to this Court for further relief.

Fifth and Sixth, the Court will not enjoin Petitioner's re-detention, as it has no basis in the record or in its experience to believe that such an event is likely or is threatened. Nor will it enjoin Respondents from asserting that an IJ's grant of bond is subject to an automatic stay. If Petitioner is re-detained, or continues to be detained despite a grant of bond, she may apply to the Court for further relief.

Seventh, the Court notes that the Third Circuit has held that attorneys' fee awards are permitted under the EAJA in non-citizens' habeas cases. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 432 (3d Cir. 2026) ("[W]e hold the EAJA unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241"). Under the EAJA, a court may award fees and expenses to a prevailing party against the United States, unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Because there is the potential for further proceedings in this action, the Court will hold Petitioner's fee request in abeyance pending completion of a bond hearing.

## 4. Conclusion and Order

In sum, the Court finds that Petitioner has a clear statutory/regulatory right to a bond hearing before an Immigration Judge; and that it is appropriate for the Court to order such a hearing in the first instance before reaching her constitutional due process claims for similar

---

arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests.") (brackets in *Ghanem*; citations and internal quotation marks omitted). *Cf. German Santos*, 965 F.3d at 213 (holding, based upon a *Mathews* due process analysis, that "once [mandatory] detention under § 1226(c) has become unreasonable, the Government must put forth clear and convincing evidence that continued detention is necessary").

relief. Accordingly, the Petition for Writ of Habeas Corpus [1] is GRANTED in part and DENIED in part, as follows:

AND NOW, this 8th day of May, 2026,

IT IS HEREBY ORDERED that Count I of said Petition is GRANTED in the form of a Bond Hearing under § 1226(a) before an Immigration Judge, to be provided by Respondents in accordance with this Opinion and within **five (5)** business days hereof;

IT IS FURTHER ORDERED that Respondents will ensure that the Bond Hearing will be conducted by a neutral adjudicator, who (i) will apply all procedural safeguards ordinarily required by due process (including factfinding based on a record produced before the adjudicator and disclosed to Petitioner, an opportunity to make arguments on the Petitioner's behalf, and the right to an individualized determination of Petitioner's interests); and (ii) will consider whether additional procedural safeguards (such as modifications to the burden or standard of proof) are required due to the erroneous prolongation of Petitioner's detention without a bond hearing;

IT IS FURTHER ORDERED that Respondents will file a Status Report with the Court within **eight (8)** business days hereof confirming that Petitioner received a Bond Hearing and the results of that hearing;

IT IS FURTHER ORDERED that Petitioner's request for attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, will be held in abeyance pending further order of this Court following completion of the Bond Hearing;

12

AND IT IS FURTHER ORDERED that the Petition is DENIED in all other respects, without prejudice.

 _s/Nora Barry Fischer_
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf: counsel of record